IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**RYNELL ROBERTO EVANS**                                  **PLAINTIFFS**
**& NANCY M. EVANS**

v.                                                            Civil No. 1:14cv169-HSO-RHW

**PRUDENTIAL INSURANCE COMPANY**
**OF AMERICA & HUNTINGTON**
**INGALLS INDUSTRIES, INC.**                                      **DEFENDANTS**

**<u>MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT
PRUDENTIAL INSURANCE COMPANY OF AMERICA'S [43] MOTION FOR
SUMMARY JUDGMENT AND DENYING DEFENDANT HUNTINGTON
INGALLS INDUSTRIES, INC.'S [40] MOTION FOR SUMMARY JUDGMENT</u>**

BEFORE THE COURT are (1) the Motion [40] for Summary Judgment filed by Defendant Huntington Ingalls Industries, Inc. ("Ingalls") and (2) the Motion [43] for Summary Judgment filed by Defendant Prudential Insurance Company of America ("Prudential"). Plaintiffs Rynell Evans and Nancy Evans have filed a Response [45] only as to Prudential's Motion. Prudential has not filed a reply to Plaintiffs' Response.

This civil action is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* ("ERISA"). Based on the record before the Court, Defendant Prudential is entitled to judgment as a matter of law under ERISA. Prudential's Motion [43] for Summary Judgment will be granted.

Ingalls' Motion [40] for Summary Judgment, however, will be denied. Ingalls has not carried its summary judgment burden to demonstrate the absence of any issue of material fact as to its potential liability to Plaintiffs under 29 U.S.C. § 1132(a)(3)(B).

I.  BACKGROUND

A.  Factual Background

Larry McNair ("Mr. McNair") began working at Northrop Grumman Corporation's ("NGC") Pascagoula, Mississippi, shipyard in 1974 and retired in 2004.  Turner Decl. [40-1], at ¶3.  Mr. McNair participated in the company's group life insurance plan (the "Plan") as an employee and retiree of NGC.  Id.  On October 23, 1990, Mr. McNair completed a paper form for "Life Insurance Beneficiary Change Only" (the "Paper Designation") designating his son, Plaintiff Rynell Roberto Evans, as his life insurance beneficiary with Rynell's mother, Plaintiff Nancy M. Evans, listed as guardian; Rynell was a minor at the time of the designation.  Change Form [40-3].

In 2010, NGC decided that it would "no longer honor paper beneficiary designation forms."  Turner Decl. [40-1], at ¶5.  This change was announced to retirees in an insert to the 2011 Retiree Enrollment Benefits Guide which states, in relevant part:

> If you previously designated a beneficiary on paper, that designation will not be honored starting January 1, 2011.  If you are married and you do not name a specific beneficiary(ies) online through My Benefits Access or by calling the Northrop Grumman Benefits Center (NGBC), your life insurance benefit automatically will be paid to your surviving spouse.

Turner Decl., Attach. 2, 2011 Benefits Guide Insert [40-1], at 18.  It is undisputed that a copy of this Benefits Guide and insert was mailed to Mr. McNair.  Turner Decl. [40-1], at ¶6.  After this change was announced, Mr. McNair did not name a new beneficiary online or call the telephone number provided.  Id. at ¶6.

2

NGC's shipbuilding business was taken over by Ingalls on March 31, 2011, and Ingalls began administering the NGC group life insurance plan. *Id.* at ¶¶2, 4. Ingalls continued NGC's policy of not recognizing paper beneficiary designations, and notified retirees of this decision in the 2012 Retiree Enrollment Benefits Guide. Turner Decl., Attach. 4, 2012 Benefits Guide [40-1], at 34. Mr. McNair was mailed a copy of the 2012 Benefits Guide, but Ingalls never received a new beneficiary designation from Mr. McNair. Turner Decl. [40-1], at ¶¶8–9.

Mr. McNair passed away on July 10, 2013. Death Certificate [40-2]. Upon Mr. McNair's passing, Ingalls provided Prudential with beneficiary information required to pay a death benefit under the Plan and informed Prudential that there was no valid beneficiary designation of record at the time of Mr. McNair's death. Lopes Decl. [43-1], at ¶14. Ingalls did not provide a copy of Mr. McNair's original Paper Designation to Prudential. Ingalls' Answer [28], at ¶19. On August 15, 2013, acting upon the information provided by Ingalls, Prudential followed the Plan's default payout procedures and made a $25,000.00 payment to the highest surviving class of relatives under Plan, Mr. McNair's surviving spouse Vera McNair. Lopes Decl. [43-1], at ¶16.

In a letter dated November 8, 2013, Plaintiffs' counsel contacted Prudential to assert that Plaintiffs were the proper beneficiaries under the Plan. *Id.* at ¶17; Ltr. at 30. On November 15, 2013, Prudential informed Plaintiffs' counsel that since no valid beneficiary designation was provided by Ingalls, benefits under the Plan had already been paid to the highest surviving class of relatives. Lopes Decl.

[43-1], at ¶20; Ltr. at 36. According to the Declaration of Maria Lopes, Prudential's Claims Manager, the November 8, 2013, letter from Plaintiff's counsel was the earliest date Prudential received any information concerning Plaintiffs' claim to be purported beneficiaries. Lopes Decl. [43-1], at ¶18.

Plaintiffs allege, however, that they contacted Ingalls on July 22, 2013, and followed the instructions of Ingalls representatives to submit a claim under the Plan by faxing a copy of the Paper Designation and Mr. McNair's newspaper obituary to Ingalls. Am. Compl. [23], at ¶18. Plaintiffs maintain that Ingalls failed to inform Prudential of their claim or the Paper Designation, "with no valid reason." *Id.* at ¶19. On December 18, 2013, in response to another letter from Plaintiffs' counsel, Prudential informed Plaintiffs that Prudential never received the Paper Designation they faxed to Ingalls on July 22, 2013. Dec. 18, 2013, Ltr. [23-5].

B.  Procedural History

Plaintiffs filed this civil action in State court on March 7, 2014, naming Prudential and Ingalls as Defendants and asserting claims for relief under various State insurance laws found in Title 83 of the Mississippi Code. Compl. [1-2]. On April 17, 2014, Prudential removed the case to this Court on the basis of federal question jurisdiction, arguing that Plaintiffs' State law claims were preempted by ERISA; Ingalls joined in and consented to the removal. Not. Removal [1]; Joinder [3].

Plaintiffs moved for remand, but the Court denied their Motion [6], finding that Plaintiffs' State insurance law claims were preempted by ERISA. Order [21].

In its Order denying remand, the Court also dismissed Plaintiffs' State insurance law claims and afforded Plaintiffs the opportunity to file an Amended Complaint stating claims under ERISA. *Id.* On February 25, 2015, Plaintiffs filed an Amended Complaint [23], advancing the same factual bases for relief, but recasting them as claims under ERISA.

Ingalls filed a Motion [40] for Summary Judgment on October 29, 2015, and Prudential filed a Motion [43] for Summary Judgment on November 11, 2015. On November 19, 2015, Plaintiffs filed a Response [46] only as to Prudential's Motion.

## II. DISCUSSION

A. Summary Judgment Standard

"Summary judgment is an appropriate procedural vehicle for the resolution of a suit by an ERISA plan beneficiary." *Greene v. Syngenta Crop Prot., Inc.*, 207 F. Supp. 2d 537, 542 (M.D. La. 2002). In resolving such motions, "the usual summary judgment rules control." *Id.*

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is to be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The summary judgment movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where, as here, the burden at trial rests on the non-movant, the movant

must merely demonstrate an absence of evidentiary support in the record for the non-movant's case." *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (internal quotation omitted).

If the movant satisfies this initial summary judgment burden, the burden then shifts to the non-moving party to produce evidence of an issue of material fact requiring trial. *Id.* When confronted with a factual controversy on summary judgment, the court views "the evidence and all factual inferences from that evidence in the light most favorable to the party opposing the motion and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant." *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349 (5th Cir. 2005). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

B.   Plaintiffs' Claims Against Prudential

Plaintiffs allege that Prudential wrongfully denied their claim to Mr. McNair's life insurance proceeds, and that Prudential should have "conducted a reasonable investigation into the existence and ongoing validity of [the Paper Designation.]" Am. Compl. [26], at ¶¶23, 25. Plaintiffs' Amended Complaint does not reference the particular statutory provision within ERISA entitling them to relief against Prudential for such claims. Plaintiffs' Response, however, clarifies that they are seeking to recover benefits due under the terms of the Plan pursuant

to 29 U.S.C. 1132(a)(1)(b).  Pls.' Resp. [45], at 9.  Plaintiffs also argue that Prudential failed to fulfill its fiduciary duty under ERISA as described in 29 U.S.C. 1104(a)(1)(B).  *Id.* at 6.

      1.     <u>Plaintiffs' Claim to Benefits</u>

This Court's review of Prudential's benefits determination is governed by ERISA.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Under ERISA, "when the language of the plan grants discretion to an administrator to interpret the plan and determine eligibility for benefits, a court will reverse an administrator's decision only for abuse of discretion."  *High v. E-Systems, Inc.*, 459 F.3d 573, 576 (5th Cir. 2006).   The court reaches a finding of abuse of discretion "only when the plan administrator acted arbitrarily or capriciously."  *McCorkle v. Metro. Life Ins. Co.*, 757 F.3d 452, 457 (5th Cir. 2014) (citations omitted).  "[T]he abuse of discretion standard is the functional equivalent of arbitrary and capricious review: there is only a semantic, not a substantive, difference between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context."  *Id.* at 457 n.12.

Here, the Plan expressly grants Prudential discretionary authority to interpret the terms of the Plan and to determine eligibility for Plan benefits.  Summary Plan Description [43-1], at 70.  As such, this Court must review Prudential's determination regarding the proper beneficiary under the Plan under the arbitrary and capricious standard.  *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214–15 (5th Cir. 1999) (if the language of the plan

grants discretionary authority, a court will analyze whether the plan administrator acted arbitrarily or capriciously). Judicial review of a plan administrator's decision "need not be particularly complex or technical; it need only assure that the administrator's decision falls somewhere on a continuum of reasonableness—even if on the low end." *Atkins v. Bert Bell/Pete Rozelle NFL Player Ret. Plan*, 694 F.3d 557, 566 (5th Cir. 2012). "A decision is arbitrary when it is made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 539 (5th Cir. 2012) (internal quotation omitted).

Based on the record before the Court, Prudential has carried its initial summary judgment burden to demonstrate the absence of any genuine issue of material fact as to whether its decision to award benefits to Mrs. McNair, rather than to Plaintiffs, was arbitrary and capricious.

Under the terms of the Plan, Ingalls was responsible for providing data required by Prudential to make a claims determination. Group Contract [43-1], at 81. After Mr. McNair's death, Ingalls supplied Prudential with information to pay the death benefit, and indicated that there was no valid beneficiary designation of record. Lopes Decl. [43-1], at ¶14. Ingalls admits that it did not provide a copy of Mr. McNair's original Paper Designation to Prudential. Ingalls' Answer [28], at ¶19. It is also undisputed that no evidence of Plaintiffs' claim was submitted to Prudential until several months after Prudential had already made payment to Mrs. McNair. Lopes Decl. [43-1], at ¶18; Am. Compl. [23], at 5 ("Ingalls . . . did not

8

even notify [Prudential] concerning [Plaintiffs'] claim for the life insurance policy . . . ."). Under the Contract between Prudential and Ingalls, Prudential was entitled to rely on Ingalls to provide the necessary information for paying claims, and that is precisely what Prudential did.

The decision to award benefits to Mrs. McNair was undertaken after obtaining beneficiary information from Ingalls, soliciting a claim form from Mrs. McNair, and obtaining documentation confirming the marital relationship, all of which demonstrate a reasonable investigation. Prudential's Records [43-1], at 15–29. There was no evidence whatsoever in the record before Prudential at the time the benefits were paid to indicate that anyone other than Mrs. McNair was entitled to those benefits.

Prudential's decision to award benefits to Mrs. McNair was not arbitrary and capricious or an abuse of discretion, and was rationally connected to the known facts. The Court will, therefore, affirm Prudential's decision to award benefits to Mrs. McNair.

2.   Plaintiffs' Fiduciary Duty Claim

Plaintiffs contend that Prudential, having already paid benefits to Mrs. McNair, owed a fiduciary duty to continue to investigate the validity of Plaintiffs' claim once it was made known to Prudential. Am. Compl. [26], at ¶25. Plaintiffs, however, cite no legal authority for the proposition that an ERISA fiduciary's duty to investigate claims on a life insurance policy continues after a payment under the Plan has already been distributed. Plaintiffs are represented by counsel in this

action, and if such authority exists, it was the duty of Plaintiffs' counsel to bring such authority to the Court's attention. Based on the records before Prudential at the time it made payment to Mrs. McNair, the Court finds that Prudential exercised appropriate care in making payment and did not breach its duty to act as a reasonable fiduciary under the Plan.

Plaintiffs further contend that Prudential is liable for Ingalls' failure to exercise due care in maintaining and providing records and information regarding their claim. Am. Compl. [23], at ¶¶ 24, 26. Under ERISA, however, one fiduciary may delegate certain areas of authority to another fiduciary under the terms of a plan, and each is only liable for its own conduct. 29 U.S.C. § 1105; *see also Presley v. Blue Cross-Blue Shield of Alabama*, 744 F. Supp. 1051, 1058 (N.D. Ala. 1990). The record indicates that Prudential was entitled to and did delegate to Ingalls the duty to provide documentation regarding beneficiary designations under the terms of the Group Contract. Group Contract [43-1], at 77–89. The Group Contract specifically provides that "[a]t the times set by Prudential, the Contract Holder [Ingalls] will send the data required by Prudential to perform its duties under the Group Contract." Lopes Decl. [43-1], at ¶6; Group Contract [43-1], at 81. Ingalls maintained all records pertaining to its employees' coverage under the Plan, including beneficiary designations. Lopes Decl. [43-1], at ¶13.

Because Prudential appropriately delegated to Ingalls the responsibility to maintain records and deliver documentation, Prudential is not liable for any act or omission of Ingalls in carrying out this responsibility,

10

> except to the extent it participates knowingly in the breach, or fails to act reasonably in discharging its own responsibilities and thereby enables the other fiduciary to commit the breach, or it has knowledge of a breach by such other fiduciary and makes no reasonable efforts under the circumstances to remedy the breach.

*Presley*, 744 F. Supp. at 1058. There is no evidence before the Court that Prudential had any notice that the records provided by Ingalls were less than complete until after Prudential had already paid benefits to Mrs. McNair, and Prudential was entitled to rely on Ingalls' representations under the terms of the Group Contract. There is no competent summary judgment evidence to establish that Prudential could be held liable for any alleged failures by Ingalls to provide documentation or act as a reasonable fiduciary pursuant to 29 U.S.C. § 1104(a)(1)(B). Prudential is entitled to summary judgment, and will be dismissed from this civil action.

C.  Plaintiffs' Claims Against Ingalls

   1.  Plaintiffs' Standing Under ERISA

Ingalls has argued that Plaintiffs lack standing to bring an ERISA claim because they are not beneficiaries under the Plan.[1] Mot. Summ. J. [41], at 6. An ERISA beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8). Plaintiffs were originally designated by a participant (Mr. McNair) to receive benefits under the Plan and would have remained beneficiaries

---

[1] Ingalls' entire argument on summary judgment is based on Plaintiffs' lack lack of standing. Ingalls Mem. Supp. Mot. Summ. J. [41], at 6–8. Ingalls has not addressed the merits of Plaintiffs' allegations about its conduct.

11

if not for the changes made by Ingalls, and it is not clear what authority Ingalls had to make these changes unilaterally.  It is at least arguable that if Ingalls had not nullified the Paper Designation, or if Ingalls had supplied complete records to Prudential, including Plaintiffs' faxed claim information, Plaintiffs might have had a colorable claim to benefits under the Plan.

The Fifth Circuit has stated that "an employer should not be able through its own malfeasance to defeat . . . standing." *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1221 (5th Cir. 1992).  In *Leuthner v. Blue Cross & Blue Shield of Ne. Pennsylvania*, 454 F.3d 120 (3d Cir. 2006), the Third Circuit Court of Appeals articulated the standing analysis in such situations, holding that "a plaintiff has statutory standing if the plaintiff can in good faith plead that she was an ERISA plan participant or beneficiary and that she still would be but for the alleged malfeasance of a plan fiduciary." *Id.* at 129; *see also Christopher*, 950 F.2d at 1222 (articulating a "but for" standing test under ERISA).

Ingalls cites an unpublished Fifth Circuit case, *Caples v. U. S. Foodservice, Inc.*, 444 F. App'x. 49, 51 (5th Cir. 2011), for the proposition that an individual who was not properly designated as a life insurance beneficiary at the time of a covered employee's death does not have standing to bring a suit under ERISA.  Ingalls overlooks the fact that in *Caples* the plaintiff lost her beneficiary status due to the actions of the covered employee rather than because of conduct of the fiduciary.  The record in *Caples* revealed that the employee was told that he had to elect coverage under his employer's new management system, and that his old coverage

would expire. *Id.* at 51. The employee then interacted with the employer's new benefits management system, elected various forms of coverage, and was given the option to designate a life insurance beneficiary, but did not. *Id.* In *Caples*, it was clear that it was not the employer's malfeasance, but the choice of the insured, that caused the covered employee's ex-wife to no longer be considered a beneficiary under the Plan.

Here, by contrast, there is no evidence of any affirmative action taken by Mr. McNair to remove Plaintiffs as beneficiaries of his life insurance policy or select a default payout option. Plaintiffs have sufficiently pled a claim that, but for Ingalls' alleged malfeasance, they would still be considered beneficiaries under the Plan. *See Leuthner,* 454 F.3d at 129. Plaintiffs do not lack standing to pursue their ERISA claims against Ingalls.

2. Plaintiffs' Breach of Fiduciary Duty Claim

Even though Plaintiffs are not entitled to recover benefits under the Plan from Prudential pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiffs may nevertheless have an equitable remedy against Ingalls for its alleged failure to fulfill its fiduciary duties pursuant to 29 U.S.C. § 1104(a)(1)(B). *See French v. Dade Behring Life Ins. Plan*, 906 F. Supp. 2d 571, 583 (M.D. La. 2012). Such an equitable remedy is authorized under ERISA pursuant to 29 U.S.C. § 1132(a)(3)(B), which allows participants and beneficiaries to bring suit "to obtain other appropriate equitable relief (i) to redress [ERISA violations] or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3)(B).

Ingalls has not carried its initial summary judgment burden to demonstrate the absence of any genuine issue of material fact as to whether it may or may not be liable to Plaintiffs for its own alleged failure to act as a reasonable fiduciary in accordance with 29 U.S.C. § 1104(a)(1)(B).  For example, Ingalls has not submitted any evidence to support the conclusion that the terms of Mr. McNair's original Plan allowed Ingalls to unilaterally nullify its Plan participants' paper beneficiary designations.  There is also no evidence before the Court to establish that, having made the decision to nullify paper designations, Ingalls had the authority to withhold information contained in old designations from Prudential, rather than turning over all relevant information, thereby allowing Prudential to make a more informed decision about a purported beneficiary's entitlement to benefits under the Plan.  Ingalls has not submitted sufficient competent summary judgment evidence on these questions to carry its initial summary judgment burden.

Moreover, genuine issues of material fact remain as to whether Ingalls gave Plaintiffs misleading instructions as to how to submit a claim, whether Ingalls received Plaintiffs' July 22, 2013, fax, and why, if Ingalls received the fax, it did not follow up with Plaintiffs or notify Prudential of the information received by fax. Prudential was authorized to make benefits determinations under the Plan, and it was Ingalls' responsibility to provide Prudential with all documents necessary to make such determinations; whether or not Ingalls fulfilled this duty cannot be resolved based upon the current record, and at least at this juncture, presents a disputed question of material fact.

D.      <u>Prudential's Request for Attorneys' Fees</u>

Prudential has requested that the Court award it attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1) if it is successful on summary judgment. Prudential Mot. Summ. J. [43], at 14. An award of attorneys' fees and costs under ERISA is discretionary, and a district court applies the test stated in *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980). *See also* 29 U.S.C. § 1132(g)(1).

> In deciding whether to award attorneys' fees to a party under [ERISA], therefore, a court should consider such factors as the following:
> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the ability of the opposing parties to satisfy an award of attorneys' fees;
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
> (5) the relative merits of the parties' positions.

*Bowen*, 624 F.2d at 1266.

The Court finds that although Prudential is entitled to summary judgment, Plaintiffs' assertions are not so obviously without merit and suit was not brought in bad faith. Prudential was at a minimum an interested party to this dispute, even though Plaintiffs' only claim to survive summary judgment is against Ingalls. Because Ingalls' potential liability remains an open question, the Court cannot fully weigh the *Bowen* factors at this stage of the proceedings to determine whether an award of attorneys' fees to Prudential would be appropriate. The Court will deny Prudential's request for attorneys' fees at this juncture, without prejudice to

Prudential's ability to seek its attorneys' fees after the Court has reached a final decision on the merits.

### III.  CONCLUSION

Based on the foregoing,

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [43] for Summary Judgment filed by Defendant Prudential Insurance Company is **GRANTED**.  Plaintiffs' claims against Prudential are hereby **DISMISSED WITH PREJUDICE**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the Motion [40] for Summary Judgment filed by Defendant Huntington Ingalls Industries, Inc. is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that Prudential's request for attorneys' fees contained in its Motion [43] for Summary Judgment is **DENIED WITHOUT PREJUDICE** to Prudential's right to request such relief upon final resolution of this case on the merits.

**SO ORDERED AND ADJUDGED**, this the 26th day February, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE